Appreciate the arguments in the previous case and the case is submitted. Chief Judge Elrod, Judge King, Judge Graves, may it please the court. My name is Todd Wallace and I'm appellate counsel for Mr. William Navarre, the appellant in this matter. I have requested to reserve five minutes for rebuttal. Your Honor, this case involves and presents novel issues of Louisiana assignment law, which is rarely litigated, but what we do know here is that when you look at the various cases where courts have examined the validity of assignment, it's almost universal that the parties privy to the purported assignment are the ones pointing fingers at each other. It's usually one side saying, I did assign it, and the other side saying, no, I didn't. Here, both parties privy to the purported assignments at issue, universally, uniformly agree that back in May and June of 2021, well before the prescriptive period, well before the lawsuit was filed, that an assignment of rights took place. Okay? And with that backdrop in mind, I want to discuss three issues that permeate the case today, all of which the district court erred in finding. Under Louisiana law, any written language, no matter how informal, if it confirms an intent by the owner of the right, in this case Mr. Serene, he was the owner of the house, if it reflects an intent to transfer the ownership of that right to my client, Mr. Navar, then that will suffice for an assignment under Louisiana law. Under Louisiana law, an assignment may also be established via oral discussions or an assignment. And number three under Louisiana law, a debtor ... If it reflects an intent to make an assignment in the future, that's sufficient that the assignment is made? Well, Your Honor, I would suggest that with regard to the written agreements in May and June of 2021, there is language that talks about an assignment in real time. Okay? Well, that's the crux of the matter, isn't it? Yes. Because we are so blessed to have three states in our circuit, one of them who has the English common law, one of them who has the Napoleonic code, and one who has a mix of common law and Spanish law in its history. And this is future tense language in the side letter in addendum, and isn't that called a suspensive condition under Louisiana law, which is similar to a condition subsequent in the common law, meaning that the assignment would come into effect only after you executed the assignment and power of attorney document, which did not occur until after the prescriptive period ran. And I think that I've dealt with Louisiana law long enough now that maybe I said that correctly, but you can correct me if I didn't. I would agree, Chief Judge Elrod. I believe you did. And my wife is a loyal law professor, would applaud you for that and say that you did a very good job at that. But what we have here is not simply language in an agreement. We have common intent of the parties coupled with the language of the agreement. And let's get into it because you raised a fair question, because that is the crux here. So, where do you get the common intent of the parties? The common... You're pulling it from outside the agreement. I'm pulling it outside of the June 2021 agreement. Yes, Your Honor.  There is... That is extrinsic evidence. That is extrinsic evidence, parole evidence. And we get to use that only if the terms of the agreement are ambiguous. Yes, Your Honor. And I would argue that the terms here are unambiguous here. You certainly have in the side agreement, later in the side agreement, something that contemplates the drafting of a written assignment. Okay. But there's a lot more to the side agreement than just that. And I want to be clear about this. Well, tell me what's ambiguous. Okay. Well, first of all, prior to that, it says that the pursuant to this agreement, the buyer and seller, I'm looking at the record of appeal at 241, wish to confirm their mutual understandings and agreements, contemporaneously with and conditioned upon the transfer of the property of the closing, set over, transfer, and assign the existing proceeds and any and all rights entitled to the claim and the right to pursue that.  That's, that's in there. So now, if that conflicts, well, if that conflicts with something saying you must reduce it to writing and it must have X, Y, and Z, okay, then we have a conflicting provisions in the contract. That's not the same as an ambiguity. I would argue, respectfully, Judge, I would argue that there is, that if there's a conflict in the contract and the two terms can't be mutually resolved in that, it is ambiguous in that result, in that context. Well, and let me go farther about what else that side agreement contemplates or requires. Excuse me. It assigns the money that Mr. Serene has already recovered pursuant to the insurance claim as a condition of the closing. It assigns, it provides my client, Mr. Vard, the right to come into the home at any point in time to help pursue the claim prior to closing. Okay, it also gives my client the right to step into the shoes and do what it needs to pursue the claim. None of those provisions would have been required pre-closing, right, pre-closing, none of those conditions would have been required if an assignment had not taken place. So then, going back to everything that was going on at this time in May and June of 2021, coupled with some provisions that we believe are in conflict, you do look to the common intent of the parties. And to that point, you know, I have two cases I'd like to discuss with you here this morning. One, the Transworld Drilling from the Fourth Circuit, Louisiana Fourth Circuit. Okay, in that case, the provisions of the assignment agreed to assume liabilities could be interpreted as an express agreement. But in this case, the determination of the intent of the parties when they entered the assignment therefore controls. Intent is one of those subjective facts listed by this court which usually makes disposable on the case by motion for summary judgment inappropriate. And that's the context we're here, obviously. We're here to argue that the district court judge erred in granting the summary judgment. And in that case, what the court said, because the contract was not clear enough, then we do get to look to the intent of the parties. So it goes back, Judge Grace, to what I was saying earlier. When you look at the language of the side letter agreement, the first part talks about that Mr. Serene hereby assigns, does assign, will assign contemporaneously at the closing, okay, that when you combine that versus the other sections of the agreement, including an exchange of over $200,000, right, he's assigning that money already as part of this agreement that would not be required if there was no assignment yet. So you have to take a look at all of these things combined as a totality of the circumstances. Are you relying on the whereas clauses to establish this or can we go further? That was the language I was quoting earlier. Yeah, that's what I thought. But once again, in Louisiana law or code, it's prefatory. And so it's not binding. It's, that doesn't, you can't use a whereas clause. It's just considered prefatory language, and only the language that follows is the part that's binding. Well, again, Your Honor, I would argue— Then you're McCary versus Oceaneering International, Inc., Louisiana 1st Circuit. Yeah, the point I guess I'm trying to make, Your Honor, is that the whereas provision up front reflects the intent of the parties as you're reading the rest of the agreement. But if it conflicts with prefatory language that conflicts with the actual language that's carried out, we go to the actual language under, is that correct, under Louisiana law? I would agree with that, Your Honor, yes, yes. So if there is a conflict between the whereas and the other, the whereas does not control and we don't say, oh, well, that rates a jury issue. Well, I would argue, as I just explained, Your Honor, there are other provisions in the contract that talks about what Mr. Serene is doing as far as assigning his rights and moving this forward that shows that the parties had agreed to an assignment effect prior to and or effective at closing. None of these other conditions would be relevant if, for example, an assignment had not taken place. And we would argue that it's now up to the trier-de-fact to decide those circumstances and to determine whether, looking at the totality of circumstances, looking at the language, and I agree the language is important, if there was an actual assignment here. Your Honor, I would also argue that aside from the written agreements, and as I discussed earlier, you can have an oral agreement for an assignment under Louisiana law. The law is clear on that and it can be proven just like any other fact. And of course, the case law is very clear that the assignment can be proven just like any other issue. So you go to the facts. And here, leading up to the May and June agreements, you had discussions, negotiations between the representatives of the two parties. The buyer and seller did not meet and discuss this, certainly recognize that and agree with that. But to get to the language of the May addendum and the June 2021 side agreement, these agreements don't just pop up out of air. It's subject to negotiations, okay? And so, when you look at the sworn- The oral agreement was between your client, who said he never talked to the serene, so it was between your client and an agent of the serene. Correct, Your Honor. And the record's not clear as to who actually the representatives are. My point is this. In order to draft these agreements, the parties have to come to some understanding as to what is going to be included in the language. And what is clear, according to the affidavits submitted- Who had the oral agreement with whom? With the representative of Mr. Serene. And I do not know who that is. That's correct. That's correct. I do not. I guess my point is, in these negotiations and discussions, the language to get to the addendum agreement and the side agreement, there had to be an understanding that there's going to be an assignment and that there is an assignment. And when you look at the sworn affidavits that are part of the record in this case, by Mr. Serene, the seller, and by Mr. Navar, the client, the affidavits uniformly talk about the discussions that resulted in these agreements whereby they understood that there was an assignment as of 2021. Mr. Serene has not been deposed in this case. So all we have is his affidavit, which has been uncontroverted. Mr. Navar has been deposed, and he says, I understood that by virtue of everything that was discussed prior to the May addendum and the June side letter agreement, and everything that had evolved in conjunction with the sale of the home, I fully understood that I had those rights to pursue the post-loss insurance claims assigned to me. And I would not have gone forward with this if that was not the case. And again, I hearken back to some of the other provisions of the agreement that we talked about, such as assigning the $200,000, assigning additional proceeds, allowing him the right to come into his home during this time period. Without an assignment, there would be no need for those provisions. Given that I have two minutes left in my main argument, and I'm happy to answer any other questions, I would like to address this notion of prejudice. I believe under Louisiana law, and we've articulated this, that a debtor does not have the right to challenge the validity of an assignment under Louisiana law. And the district court, and presumably what AIG will argue is, this is not an attack on the validity of the assignment. And what the district court held in this case is, it's not an attack on the validity of the assignment. We just go straight to the January 2023 power of attorney assignment and say it was prescribed. Okay? To get to that point, your honors, the trial judge implicitly had to determine that there was no oral assignment, and that neither the addendum agreement nor the side letter agreement was a valid assignment. That is a blatant... I'm sorry? The assignment is being challenged. The assignment is being challenged. You would not deal with prescription if the assignment wasn't being challenged. Absolutely. That's exactly right. And to that point... And they have not established prejudice, have they? They have not established, let alone claim, prejudice. And I will just point out that they pointed to a single footnote in the district court briefing, which was pure argument of counsel. They argued that, well, Mr. Navarro's already, the house has been gutted, and we can't truly assess the damage. There's no affidavit testimony, there's nothing by the adjuster, there's nothing from a corporate rep of the insurance company to say how they've been prejudiced. We know, in Louisiana, that happens all the time, where houses are gutted, and things start before the insurance money comes in. But just to your point, Chief Judge Elrod, you are 100% accurate that they have not pled, let alone demonstrated any evidence that they sustained any prejudice here. In fact, they have not. But to the point under Louisiana law, and there's multiple cases on this point, a debtor cannot... Correct. You do not get to the prescription or statute of limitations until a court decides the validity of the assignment. And that step was skipped here. And it's our point, it's our challenge, that the debtor cannot challenge the validity of the assignment, ever how you want to phrase it. I think Chief Judge Elrod did a very good job of explaining how she would phrase this particular challenge. And I see that I'm out of time. May I finish? You may. Wrap it up. And for those reasons, I'll handle the rest of the questions on rebuttal. Thank you for your time. May it please the court. John By on behalf of AIG Property Casualty Company. This is a case about an assignment of post-loss rights made after those rights had prescribed. The district court correctly granted summary judgment for AIG, finding that the plaintiff had no standing in this case. The assignment was made too late. You cannot assign rights that you do not have. Now how did this happen? I didn't fully understand what happened in this case until I went and looked at the cash warranty deed. And when I looked at that deed, I saw something striking. The deed was signed by Mr. Serene on June 29th, 2021 in Texas in front of a notary. The deed was signed then the following day by Mr. Navar. So the two were never even in the same room. Mr. Serene signed only the cash warranty deed and refused to sign the assignment at the  When those documents were sent, when the only document that he signed was sent, the cash warranty deed to Lake Charles, it was presented to Mr. Navar. And again, the record is not clear here, but one of two things must have happened. Either the closing attorney looking at the purchase agreement said, hey, we're missing a document that we need to sign, was supposed to be signed at the time. And Mr. Navar either said, that's fine, let's go forward, we'll get it later. But whatever happened, or the closing attorney missed it. And he just presented Mr. Navar with the cash sale and he signed it. He got his purchase price and they went on down the road. It doesn't matter actually what happened, but the thing that did happen is there was a closing with no assignment. At that point, there was a breach, right? Because there had been a previous agreement with the closing to sign an assignment by the Serene's, by the seller. So at that point, Mr. Navar could have stood up at the closing table and said, no, I'm not paying my money. I'm not going forward. He could have called up Rick Norman, Serene's attorney, and said, hey, your client is in breach. You need to send over the assignment. But he didn't do any of that. According to his testimony, they never talked. He had never met the man. He never did anything. He just paid his money for the property, got the cash deed, which was recorded, and it was done. Now, Plinsk suggests that we should look at the intent of the parties. And just sort of pretend that, well, they intended to have an assignment, so let's just pretend that there actually was one at the closing. And that's just not how contracts work in Louisiana or anywhere else. Your intent, and even if we look at the intent, what was the intent? The intent was to execute an assignment at the closing. And if you look at the side agreement beyond the whereas paragraphs, in paragraph number four, and this is the exact same language in both the side agreement and the addendum, it says, contemporaneously with the seller's and the buyer's execution of the act of sale at closing of the property, buyer and seller shall also execute an assignment in power of attorney. It was the same kind of agreement that you do when you sign a purchase agreement. I'm sure you've bought houses before, you sign a purchase agreement that says, I agree to pay X number of dollars for your house, and we're going to close in 30 days, right? But you don't have to execute an assignment to assign. That's right. And so why isn't the side letter agreement stating that the seller contemporaneously with the sales closing, that you've already referred to here, set over, transfer, and assign the policy, why doesn't that create a fact question here as to whether that was actually done? It does, it absolutely does, whether or not it was actually done at the closing. But it doesn't have to be at the closing in a document. That's right. It could have been in the- Whether or not in, they're saying the assignment already occurred. And so at some point along the way, and why don't they get to go to the jury to say, when did the assignment occur, did it occur? Well, let's take it in two pieces. It either occurred orally in writing, right? We know that by the time it was done in writing, it was January of 2023, okay? So we know when the writing happened. So then the next question is, did it happen orally? You have nothing in the record to suggest that there was an oral assignment done any time after the- Well, it says it was done contemporaneously with, with the sales closing. So it could have been done contemporaneously with the closing. You're exactly right. Navar could have sat at the closing table, and he could have picked up the phone and called Serena and said, hey, you didn't sign the assignment. And he said, no, it's good, and we're good for it, ma'am. We're good, we're good. None of, that's not in the record. Those are not the facts. Okay. Those are, if that had happened, we wouldn't be here. Prejudice is part of the requirement that you must show in order to challenge an assignment. And there's, you did not establish prejudice here, did you? I don't, well, two things. I think we made an argument that there is prejudice because for a year after the property was sold, there was at least one representation that Navar's lawyers were representing the Serenes. And so we continued to try and adjust the case, try and get into the property, which we were not able to do until after the place was gutted. So I think there is an argument that we were, that there is prejudice. Prejudice because you couldn't get into the property? Yeah, we're prejudiced because we weren't dealing with Mr. Serena anymore. How did you do anything differently that caused you somehow some legal detriment? Well, I think what we did differently is we had essentially closed our file because we had dealt with Mr. Serena. We didn't realize that Mr. Navar had retained an assignment of those rights until we got the lawsuit. Once we get the lawsuit, which is a year after the sale, we get a lawsuit that says, hey, I'm Serena, I've been assigned these rights. So a year has gone by with work on the property, with us not adjusting it. So he's done, not worked with us, not worked with AIG, and proceeded for a year working on the house, and then all of a sudden we get a lawsuit. And he says, we've got an assignment. So what do we do? The first thing AIG does is say, okay, send us the assignment, no problem, we'll work with you now that we know that you've got it. And what do they do? Do they send them the letter agreement or the addendum? No, because that's not the assignment, right? They call up Rick Norman and they say, hey, Rick, we still need that assignment from your client. You've got to get him to sign it. Norman sends the first email in November, and his client is stubborn, I'm not exactly sure what's going on, but doesn't sign it, doesn't sign the assignment. And it's not until January of 23. But I'm just trying to figure out, you know, you still have the rights as companies do that are adjusting claims and things to say, we didn't authorize this, this wasn't actually what was harmed. There's nothing that's been changed about any of that. You know, I guess technically you're probably right. But I don't know that this is an attack on, just like the district court found, this is not an attack on the validity of the assignment, it's an attack on the timing. I mean, it's a perfectly valid assignment, it just happened too late. Well, that's what, the court does not consider this to be an attack on the validity of the assignment, just what you said. Rather, the issue is whether Navarro was the proper party to file this lawsuit on June 23, 2022, considering that the Syrenes had not yet assigned its post-right, post-law strategic rights to Navarro. To be sure, the assignment was not executed at the closing, not when this lawsuit was filed, nor when this lawsuit was filed. Therefore, Navarro was not the assignee. So the court is adjudicating whether or not there was an earlier assignment in its explanation of why it doesn't need to decide if there's an assignment. So there's still the issue of whether there was already an assignment. Yeah, I think that's clearly dealt with by looking at the face of those two documents. They clearly contemplate an assignment happening at another time, and there's no evidence of an oral agreement anywhere. The only evidence that an assignment happened as intended by the parties is the one that happened in January of 23. So, I mean, I don't know that that's even, you know, surely we don't need to have a trial about that. I mean, that's not a fact that's in dispute. There's no other facts. There's no fact of an oral agreement anywhere, and there's no fact of a written agreement other than the assignment that was done in January of 23. So, I don't know that that's really in dispute. Well, what, I mean, assume, arguendo, that there was a meeting of the minds that there was an assignment. There should be an assignment. And it wasn't papered until too late. But it was already an assignment, and there was a meeting of minds, and there was consideration for it. Well, there was. Which was included in the price. There was an agreement that there would be an assignment in the future, and that's exactly right. And look, it's exactly the same as the TCC contractor's case. I mean, the facts line up almost identically. In that case, the hospital was the insured, and they had failed to add their contractors on a builder's risk policy. And by the time the assignment was done from the hospital to the contractors, it was too late. And so, the original exception was filed, hey, you don't have a right of action. So, they went back and they got the assignment signed, and they said, okay, now you have a right of action, but it's prescribed. And that late filed, late signed assignment cannot relate back and cure the defect, because you can't assign more rights than you had. So, by the time the assignment was done, he didn't have the rights against AIG. That's the whole crux of it. And that case is right on point. And like I said, it's exactly analogous with the purchase agreement. They agreed at the purchase agreement to, at closing, transfer the property and do the assignment. And Serene breached. I mean, that's what happened. Serene breached. He had an agreement, and he breached. That's where the cause of action should have been. That's when somebody should have picked up the phone and said, hey, you breached your agreement, you owe us an assignment. And that didn't happen. Instead, they went forward, filed the lawsuit. When the assignment was demanded by AIG, they went out and they chased down Serene through his lawyer and finally got him to sign the assignment. They knew they needed that assignment. They knew that the addendum and the side agreement were not the assignment. Otherwise, they would have sent those and said, here's our assignment, right? Or they would have said, call Serene. They talked about it, and he agreed orally, and that's okay in Louisiana. None of that happened. Instead, they go to Rick Norman and say, hey, you've got to chase down your client and get this assignment for us. That's what happened. The other thing that's a little, that is telling about plaintiff's conduct is, when the assignment was done and sent to AIG, it was undated. It was undated and it had attached to it the dated addendum, right? And it reflected that it was effective back as to the closing date. So on its face, it looked like, okay, here's the assignment. AI- Retroactively memorializes something that occurred before. It's, excuse me? Perhaps it retroactively memorialized something that occurred before. Perhaps if we had some evidence that that had happened before, but we don't have any evidence. There is zero evidence that the assignment happened before and they were just papering it. They knew they needed this assignment and I suspect they realized that it was late and so they didn't date it. So we had to do two things once we got this case. The first thing we did was call up Rick Norman and say, hey, when did your client sign this thing? It's not dated. And Rick said, to his credit, he went back in and he found the emails and he said, look, I sent him an email in November asking him to sign it and then I sent him another one in January telling him to sign it. And there's some redacted language in those emails that are in the record where I'm sure he's saying, hey, you agreed to sign this assignment, you better do it. I know you refused earlier, but now you've got to do it or you're going to get sued. And so he finally does it and then we get it. So Rick Norman signs an affidavit in support of our motion for summary judgment that confirms that whole process and confirms when the assignment was made. And that was the first critical thing. The next thing we had to figure out was, was there any other assignment? Was there any other time when something had been done? Did somebody write on a cocktail napkin or pick up the phone and make an assignment, right? Because, again, under Louisiana law, that would have been fine. Any, the form does not, they're not very strict about form, right? So the form of the assignment is not, can be loose as long as it does what it's supposed to do. As long as you actually do it or you could have done it orally, like I said earlier. They could have picked up the phone and called Mr. Serene and confirmed that the assignment was included. But none of that happened, right? So we went to go take Mr. Navar's deposition and I was scared to death that he was going to say, yeah, I talked to him and we agreed and it was no big deal. And when he said, I never met the guy, we never talked, I ended the deposition and I said, wait, this case is over. Because that was the thing I was worried about. Was there some, because I know, being a Louisiana lawyer, that that's a perfectly valid way to have an assignment. But he, to his credit, was very honest and said they never met, they never talked. So I had Rick Norman's affidavit with the date of the written assignment. I had no oral assignment, and so it was, in my opinion, the case was over. And with that, I think my argument is over. And- Do you agree that you're required to show prejudice? No, sir, I do not. I don't think prejudice is required in this case. I think it's a perfectly fine assignment. I think there was consideration. I think I'm not challenging the signatures. I think everybody had consent. I just think that the date of it, which I'm also not arguing, I think it's got a valid date. I think we proved up the date. So I think it's a perfectly valid assignment, it's just late. Thank you. Thank you. May it please the court. I'd like to pick up where you left off, Judge Grades. They absolutely have to prove prejudice. The problem here is they're focused on the January 2023 assignment, which they believe to be valid and perfectly fine. I don't disagree with that. The problem with the district court's decision, and I think Chief Judge Elrod has picked up on this, we're skipping a step. We have sufficiently argued and alleged through language in the side agreement and the May addendum agreement, common intent of the parties, as well as oral contract reach. Resulting in, Chief Judge Elrod noted, contemporaneous assignment at the closing. That's the assignment that is being attacked here, so let's be very clear about that. And what the case law says is you must demonstrate prejudice. I mean, in all fairness, if you were convinced that that affected the assignment, then why did you execute this agreement in 2024? I thought about that long and hard, Your Honor, and I think the answer is, it was an attempt simply to memorialize what had already been discussed. There's no hiding the ball here, okay? It was memorializing what the parties thought had been in effect all along, okay? And it's as simple as that. To the point of this transactional attorney, Mr. Norman, the affidavit. You know what his affidavit in this case says? I participated in the drafting of the side letter agreement and the addendum. They were drafted to confirm that the Syrenes were to transfer their hurricane claim to Mr. Navare at the closing. That's what the closing attorney said. So, I understand he got involved in drafting some language later on, but in his affidavit, which again, we're on a summary judgment here. That is saying, the closing attorney is saying that was the purpose, way back when in 2021 for those agreements. As to breach, Your Honor, AIG can't claim breach of a contract. That's only Mr. Syrene and Mr. Navare who can claim breach of the closing documents. Both of those parties agree that there were no issues with the agreements, any of them, and that they fully believe that the interest had already been assigned to Mr. Navare, again, contemporaneously effective with the closing. And I agree, Chief Judge Elrod, the contemporaneous aspect of it does create an issue of fact that I think should go to the jury to decide. To be clear, AIG was on notice as early as February 2022, record site 267, five months before a suit was filed, that Mr. Navare was now pursuing this claim. They did not learn of this at the filing of a lawsuit, okay? The estimate that went to them five months before, clearly identified Mr. Navare as the one pursuing that right. And that goes to the heart of your question of prejudice. There is zero evidence here. I appreciate my contemporary argument that they couldn't get into the house. There's no evidence in the record of that. I appreciate his argument that, well, we thought it was closed, so I mean, we just sort of sat on our hands for a year. That's not evidence of prejudice, okay? And again, since we are here on a motion for summary judgment. They only need to show prejudice if we agree that an assignment had already occurred. I don't think, with all due respect, I don't think you have to decide that an assignment had already occurred. I think you have to decide that an assignment may have occurred. And then that triggers them attacking that assignment. And again, whether or not an assignment occurred in 2021, I believe should go to the trier of fact. So that Mr. Serene can be heard fully. Mr. Navare can be heard fully. So Judge Gray, a slight nuance on your question. I don't think you have to decide that to get to prejudice. I think you have to agree with me that there was at least some evidence, albeit disputed, that there was a prior assignment as of May or June of 2021. And certainly contemporaneous with the closing. Do you have any, you don't have any evidence, any affidavits, declarations from Serene and Navare that say we already did this at the closing and that's what we meant to do? Yes, that is in the record. That's precisely what's in the record, Your Honor. I mean, if you look. Tell us what those say. Okay, I'm looking at Mr. Serene. He's the seller, which I think perhaps is most important. At all times, I understood that the pending insurance claims with AIG were already assigned to Mr. Navare as of the date and time of the closing of the property. That's record 236. And again, Mr. Navare's affidavit reads similarly. Again, this is a unique case where both parties agreed as to. That it was done at the closing. They believe it was their intent to do it at the closing, either in the paperwork or a meeting of the mind some other way. That's correct. And you took the words right out of my mouth. I heard you in your questioning. But they weren't there together. The meeting of the minds. They weren't together, but the meeting of minds had already taken place. Thank you. We have your arguments. We appreciate both arguments. Thank you, panel. Thank you. The cases for today are submitted. The case will stand. The court will stand in recess until tomorrow morning at 9 a.m. Thank you.